## IN THE COURT OF APPEALS OF IOWA

No. 17-1230
Filed November 8, 2017

**IN THE INTEREST OF A.F., A.M., and A.M.,**
**Minor Children,**

**C.F., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother appeals the termination of her parental rights to her three children. **AFFIRMED.**

Judy D. Johnson of Borseth Law Office, Altoona, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Nicole Garbis-Nolan of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

A mother of three, Crystal, experienced more than two years of up-and-down progress with issues of substance abuse, mental health, and codependency. When she missed visitation, therapy appointments, and drug screens in June and July of 2017, the juvenile court terminated her parental rights to two-year-old Ar.M., four-year-old Al.M., and ten-year-old A.F.[1] She appeals the termination, alleging (1) insufficient evidence of the statutory grounds, (2) termination was not in the children's best interests, and (3) termination would be detrimental to the children due to the closeness of the parent-child relationship.

After examining the record,[2] we find clear and convincing evidence supporting termination under Iowa Code section 232.116(1)(f) and (h) (2017). Further, the children's best interests—as framed in section 232.116(2)—are served by moving forward with a safe, permanent placement. Finally, while the children have a significant bond with their mother, her continued instability poses more of a detriment to the children than termination of her parental rights. *See* Iowa Code § 232.116(3).

---

[1] The order also terminated the parental rights of Cody, father to Ar.M. and Al.M., and David, father to A.F. The fathers are not parties to this appeal.

[2] We review child-welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the factual findings of the juvenile court, but we give them weight. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Proof must be clear and convincing. *Id.* Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## I.      Facts and Prior Proceedings

The Iowa Department of Human Services (DHS) first investigated this family in January 2015 because authorities suspected the father, Cody, of selling illicit drugs from their home when A.F. and Al.M. were present.  Both Cody and Crystal denied the allegations.  The next month, February 2015, Crystal delivered Ar.M., who tested positive for methamphetamine at birth.  In March 2015, police arrested Cody for domestic abuse assault after he threatened Crystal with a knife.  Also in March, the juvenile court ordered all three children to be removed from Crystal's care and, in April, adjudicated them as children in need of assistance (CINA).

After the children's removal, Crystal attended substance-abuse treatment, support meetings, and visitation.  By October 2015, the juvenile court felt comfortable enough with her progress to return the children to her care.  The DHS kept providing supervision and services to the family.  Crystal continued with a full-time job and stable housing into the first half of 2016.

But in July 2016, the DHS case worker learned Crystal had been allowing contact between Cody and the children, which was not authorized.  At the time of the contact, Cody was "on the run" from a community corrections facility.  The DHS also found Crystal had been leaving A.F. at home alone.  The DHS asked for a second removal of the three children to foster care, which was granted by the juvenile court.  In the fall of 2016, the juvenile court noted Crystal's substance abuse was an ongoing need, but that she was "well engaged" in services.  The court expressed concern about Crystal's ability to "be protective and supervise the children."

In a March 2017 permanency order, the juvenile court believed Crystal was still "making progress" but identified Cody's upcoming release from prison (anticipated in about six weeks) as "a significant event impacting the potential safety and planned-for reunification of the children" with Crystal. The DHS case worker grew worried in the spring of 2017 when Crystal turned to alcohol to deal with the loss of her father. Intoxicated at a tavern, Crystal accidentally contacted the case worker late in the evening for a ride home. After that incident, Crystal agreed to try a different type of substance-abuse treatment.

But Crystal's downward slide continued into the summer of 2017. In late June, Crystal missed therapy appointments and visitation with the children. On one occasion Crystal could not be reached by either the case worker or the foster mother. Crystal reported being depressed and taking two sleeping pills when she had only been prescribed one pill, causing her to sleep all day. She also failed to comply with drug screens. Most troubling, in late June, after his release from prison, Cody appeared at Crystal's home, and neighbors called police to report yelling. The juvenile court found it significant that Crystal told the police she did not want charges filed against Cody.

The State filed its petition to terminate parental rights of the children's fathers on June 6, 2017. On June 27, 2017, the State amended its petition to seek termination of the parental rights of Crystal as well. The juvenile court held a combined permanency and termination hearing on July 19, 2017, and issued its termination ruling the next day.

Crystal appeals the termination ruling.

## II.     Analysis of Mother's Arguments

The analysis for terminating parental rights follows three steps.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (discussing Iowa Code section 232.116(1)-(3)). Crystal contests each step.

"The first step in our analysis is to determine if a ground for termination exists under section 232.116(1)."  *Id.*  To terminate Crystal's parental rights, the juvenile court relied on paragraph (d) for all three children, as well as paragraph (f) (for the older children, A.F. and Al.M.) and paragraph (h) (for the younger child, Ar.M.).  When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any of the grounds supported by clear and convincing evidence.  *D.W.*, 791 N.W.2d at 707.

Here, we find clear and convincing evidence to support the order under paragraphs (f)[3] and (h).[4]

The juvenile court concluded Crystal could not be an attentive parent because of her ongoing substance-abuse problems and the potential for domestic violence between her and Cody.  We give weight to the juvenile court's insights.  On appeal, Crystal highlights her testimony that her relationship with

---

[3] That provision requires proof of four elements: (1) the child is four years old or older; (2) the child has been adjudicated to be a CINA; (3) the child has been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that at the present time the child cannot be returned to the custody of her parents as provided in section 232.102.

[4] That provision requires proof of four elements: (1) the child is three years old or younger; (2) the child has been adjudicated to be a CINA; (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that the child cannot be returned to the custody of her parents as provided in section 232.102 at the present time.

Cody ended in July 2016 and that she last used methamphetamine in August 2016. The juvenile court did not credit her testimony; nor do we.

At the termination hearing, the DHS social worker acknowledged Crystal has "pretty good parenting skills" and has completed "a lot of education and has been able to reiterate the things she has learned." But the worker continued: "It's putting them into practice that has been my concern all along." The worker's testimony underscored why the children could not be returned to Crystal's care at the time of the termination hearing. We affirm the termination of Crystal's parental rights based on paragraphs (f) and (h).

"The second step in the analysis is to consider the factors under section 232.116(2)." *P.L.*, 778 N.W.2d at 40. This best-interests provision requires us to give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). On appeal, Crystal contends she "was prepared to meet the children's physical, mental and emotional needs."

The juvenile court expressed concern about the roller-coaster ride on which Crystal has taken her children: "These kids have been through a lot in the child welfare process. And they were told in early Spring 2017 that they were going to go home. And then they suffered by not going home. The process has been long and arduous." The juvenile court decided the children, especially the oldest, A.F., had suffered enough upheaval: "More than two years of diligent efforts and true reunification services earnestly provided by DHS and all professionals is all these kids can stand. It is in their best interest to provide

permanency." We can add nothing to the poignancy of those sentiments. The children have been in a pre-adoptive foster home since January 2017. The record shows it is in their best interests to move toward adoption.

"Finally, we must decide if any exceptions to termination exist under section 232.116(3)." *P.L.*, 778 N.W.2d at 41. Crystal cites paragraph (c), which allows the juvenile court to refrain from terminating parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Crystal asserts she is "clearly bonded" with her children and severing that bond would have a negative impact on them. The juvenile court recognized the closeness in Crystal's relationship with the children, but it concluded the "amount of time" that they had been waiting for stability "carried the day." We arrive at the same conclusion. While severing ties with their mother will undoubtedly be tough on these children, they would be more disadvantaged by continued uncertainty and dashed hopes for reunification. *See D.W.*, 791 N.W.2d at 709 (explaining "our consideration must center on whether the [children] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the children's] developing needs").

**AFFIRMED.**